UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOANNE GIORGIO,

        Plaintiff,

    v.

HOLLAND AMERICA LINE, INC., et al.,

        Defendants.

CASE NO. C05-0038JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 25). Neither party has requested oral argument, and the court finds the motion appropriate for disposition on the basis of the parties' briefing and supporting evidence. For the reasons stated below, the court DENIES the motion.

## II. BACKGROUND

Plaintiff Joanne Giorgio was a passenger on the M/V ZANDAAM, a cruise ship allegedly under the control of the Defendants. On January 12, 2004, Ms. Giorgio was following her husband, Thomas, down the port side staircase into the main dining room when she fell on the stairs and sustained injuries. Based on a diagram included in the report of Thomas Windsor, an engineer and expert witness for Ms. Giorgio, the staircase

ORDER – 1

has three flights of stairs, separated from each other by two landing areas. The several stairs constituting the top portion of the staircase, as well as the upper landing, spiral gradually toward the left as the observer descends. Below the upper landing is the middle portion, which contains six or seven more stairs that do not appear to spiral. According to Mr. Windsor's report, the tread depth[1] of the stairs in the middle portion of the staircase is shorter than the tread depth of the stairs in the upper portion.

Ms. Giorgio reports that she was descending the top portion of the stairs, one or two steps down, when she fell. "I started to descend the staircase, and I put my foot down and the stair wasn't there." J. Giorgio Dep. at 56:14-25. Mr. Giorgio testified that he was three or four steps into the middle portion of the stairs, below the upper landing, when he heard his wife behind him exclaim, "Oh my God!" Nov. 10, 2005, T. Giorgio Dep. at 38:8-19, 39:20-25. He turned to see her several stairs behind him, below the upper landing, falling toward the railing of the staircase. Id. at 39:24. According to all reports and witnesses, Ms. Giorgio ended her fall on the middle portion of the stairs.

Ms. Giorgio brought this action against Defendants, asserting negligent design and maintenance of the stairway on which she fell.

### III. ANALYSIS

Summary judgment is appropriate where there is "no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon filing of a motion, the non-moving party must respond by setting forth specific facts upon which there is a genuine issue. Fed. R. Civ. P. 56(e). When considering the motion, the court must view the facts in the light most favorable to the

---

[1] The report uses "tread depth" to refer to the dimension of the top of a step in the direction of travel on the staircase.

ORDER – 2

non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is not appropriate where a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The elements of a negligence claim under maritime law are (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached that duty, (3) that the plaintiff was injured, and (4) that the defendant's breach was the proximate cause of the plaintiff's injury. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1070 (9th Cir. 2001). Under maritime law, the owner of a ship owes passengers a duty to exercise reasonable care under the circumstances. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 631-32 (1959); In re Catalina Cruises, Inc., 137 F.3d 1422, 1425-26 (9th Cir. 1998).[2]

Ms. Giorgio relies on two sources of evidence to demonstrate the duty Defendants owed her and their breach of that duty. First, she relies on a series of standards and regulations that apply to various marine vessels. E.g., AM. SOC'Y TESTING & MATERIALS, STANDARD PRACTICE FOR HUMAN ENG'G DESIGN FOR MARINE SYS., EQUIP. & FACILITIES, STANDARD F1166; U.S. COAST GUARD NAVIGATION & VESSEL INSPECTION CIRCULAR NO. 4-89; 29 C.F.R. § 1910.24 (2006); 46 C.F.R. § 72.05-20 (2006); 46 C.F.R. § 72.05-55 (2006). Ms. Giorgio does not contend that these regulations bind Defendants, but rather that they are admissible evidence bearing on the jury's determination of the applicable standard of care. Regulations that are not binding by force of law, and therefore do not establish negligence per se, may nonetheless be admitted for the purpose of aiding the

---

[2] Where the alleged negligence involves unique dangers inherent in maritime travel, those dangers are among the circumstances to consider when evaluating what is reasonable under an ordinary standard of care. Catalina Cruises, 137 F.3d at 1425. Ms. Giorgio argues that the court should apply a heightened standard of care to this case. The court will submit the matter to the jury. The parties should address the issue in their jury instructions and trial briefs.

ORDER – 3

finder of fact in determining the applicable standard of care.  See Robertson v. Burlington N. R.R. Co., 32 F.3d 408, 410-11 (9th Cir. 1994) (holding that OSHA regulations may be admitted in FELA case as some evidence of applicable standard of care).  Mr. Windsor has examined the staircase aboard the ZANDAAM and concluded that it does not comply with various regulations and that compliance would have avoided Ms. Giorgio's fall.  This evidence is sufficient to create a triable issue of fact.

Second, Ms. Giorgio relies on the expert testimony of Mr. Windsor, who opines that the cause of Ms. Giorgio's fall was a combination of the slope of the rounded nose on the stair, which would reduce the friction of her foot on the stair and cause her to slip; and a change in tread depth from the upper to the middle portions of the stairs, which would require her to alter her gait between the two portions in order to accommodate the change in depth.  Mr. Windsor also opines that the hand railing was high enough that she could not stop her fall once it started.  Assuming that Mr. Windsor's report is admissible, it provides evidence from which a reasonable jury could find that Defendants departed from the ordinary standard of care in the design of the staircase and that this departure was a cause of Ms. Giorgio's injuries.

Defendants contend that Mr. Windsor's report is predicated on speculative, incorrect information, and therefore should not be admissible.  First, because Ms. Giorgio testified that her foot did not slip off any surface, Defendants contend that there is no factual basis for Mr. Windsor's opinion that Ms. Giorgio slipped off the nose of the stair tread.  Second, in light of Ms. Giorgio's own testimony that she fell on the upper portion of the staircase before she reached the middle portion, Defendants contest both the accuracy and the relevance of Mr. Windsor's opinion that she fell due to the change in

ORDER – 4

tread depth in the middle portion of the staircase. The issue central to both contentions is whether Mr. Windsor's report may contradict the testimony of Ms. Giorgio.

Unlike other witnesses, expert witnesses need not have personal knowledge of the facts underlying their opinions. Claar v. Burlington N. R.R. Co., 29 F.3d 499, 501 (9th Cir. 1994). In forming an opinion, an expert may rely on inadmissible evidence, so long as the evidence is of the type upon which an expert in the field would reasonably rely. Turner v. Burlington N. Santa Fe R.R. Co., 338 F.3d 1058, 1061 (9th Cir. 2003); Fed. R. Evid. 703.[3] In every case where a party requests admission of expert testimony, the court must determine whether the testimony is sufficiently reliable. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1018 (9th Cir. 2004) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999)).

Defendants cite no law, and the court finds none, requiring a court to exclude the opinion of a plaintiff's expert merely because the facts he relies upon in forming his opinion contradict the plaintiff's testimony. In forming his opinion, Mr. Windsor personally examined and measured the dining room staircase where Ms. Giorgio fell. He inspected the accident report, read depositions, and personally questioned several passengers on prior cruises who fell on the same staircase. He came to the conclusion that Ms. Giorgio began her fall on the middle portion of the staircase, not the top portion. This conclusion is consistent with the incident report of ship investigator Mr. Johnson, which notes that ship authorities found Ms. Giorgio lying in the middle portion of the staircase after her fall. It is also consistent with Mr. Giorgio's testimony that Ms. Giorgio

---

[3] Fed. R. Evid. 703 states in relevant part: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted."

ORDER – 5

was behind him in the middle portion of the stairway when he looked back and saw her already in the process of falling. At trial, Ms. Giorgio will need to contend with the difference between her testimony and Mr. Windsor's conclusions, but those differences provide no basis for excluding Mr. Windsor's testimony. Mr. Windsor's testimony is admissible and demonstrates a triable issue of fact.

Finally, Defendants assert that no reasonable jury could find negligence based on Mr. Windsor's report because he allegedly conceded in his deposition that the landings separating the upper and middle portions of the staircase ameliorated any potential safety risk due to the change in stair tread depth between the two portions of the staircase. Mr. Windsor's testimony belies their contention. Mr. Windsor testified that common practice is to place a landing between portions of a staircase where the tread dimensions change from the upper to lower portion. Windsor Dep. at 211:20-25; 212:1-3. He did not say that adding a landing invariably makes it safe to do so.

## IV.  CONCLUSION

For the reasons stated above, the court DENIES Defendants' motion for summary judgment (Dkt. # 25).

Dated this 4th day of April, 2006.

JAMES L. ROBART
United States District Judge

ORDER – 6